IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALL ONE INC. | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-466 |
| BERKLEY INSURANCE COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT**

Plaintiff, Call One Inc. ("Call One"), by its counsel, David B. Goodman, Carrie E. Davenport, and Kalli K. Nies, Goodman Law Group | Chicago, *of counsel,* and as his complaint against Defendant, Berkley Insurance Company ("Berkley"), states as follows:

**Nature of the Action**

1. In 2018, Berkley sold a policy of liability insurance to Call One, Berkley Select Policy Number DCP-1031000-P8 (the "Berkley Policy"), for the policy period from June 30, 2018 through June 30, 2019 with limits of coverage in the amount of $2,000,000.00. A copy of the Berkley Policy is attached as **Exhibit 1**.

2. In March 2019, disputes arose between Call One and Berkley relating to Call One's rights under the Berkley Policy arising from a claim asserted against Call One by the Illinois Attorney General.

3. The Berkley Policy required that the parties engage in non-binding mediation of their disputes prior to the commencement of a lawsuit.

4. In the present case, Call One and Berkley attempted to mediate their disputes in March 2020. However, the mediation was unsuccessful.

1

5. Call One commenced this litigation to enforce its rights under the Directors, Officers and Corporate Liability Insurance Coverage section of the Berkley Policy.

6. The disputes between Call One and Berkley that are the subject of Call One's complaint concern Berkley's breaches of its obligations to Call One in connection with the lawsuit filed under seal against Call One in the Circuit Court of Cook County, Illinois as *State of Illinois ex rel. Havis, et al. v. Call One, Inc.*, Case No. 2018 L 010085 (the "Underlying Lawsuit"). A redacted copy of the complaint against Call One in the Underlying Lawsuit is attached as **Exhibit 2**. The disputes between Call One and Berkley arise in part from Berkley's denial of Call One's demand for independent counsel in connection with the Underlying Lawsuit. Additionally, the disputes arise in part from Berkley's denial of a defense to Call One in the Underlying Lawsuit.

7. Additionally, the dispute between Call One and Berkley that is the subject of Call One's lawsuit concerns Berkley's refusal to contribute the remaining limits of coverage under the Berkley Policy toward the settlement of the Underlying Lawsuit. An unexecuted copy of the settlement agreement is attached as **Exhibit 3**.

## Parties

8. Call One is an Illinois corporation with its principal place of business in Cook County, Illinois. At all times material to this matter, Call One engaged in the sale of and provision of telecommunications services to the public.

9. Berkley is a Delaware corporation with its principal place of business in Connecticut. At all times material to this matter, Berkley was engaged in the sale of insurance products and engaged in that conduct in the State of Illinois.

**Jurisdiction and Venue**

10. Call One is a citizen of the State of Illinois.

11. Berkley is a citizen of the State of Connecticut and the Commonwealth of Delaware.

12. This Court has jurisdiction over this complaint pursuant to 28 U.S.C. § 1332 because Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2) because the claim arises out of an insurance policy by Berkley to Call One that was negotiated in Cook County, Illinois, that was delivered to Call One in Cook County, Illinois, and that insures risks found in this judicial district.

**Relevant Provisions Of The Berkley Policy**

14. Pursuant to the Berkley Policy, Berkley agreed to:

"pay on behalf of the Insured Persons all Loss up to the Limit of Liability applicable to this coverage section arising from any Claim first made against the Insured Persons during the Policy Period and reported to the Insurer in accordance with section VII. of the Common Policy Terms and Conditions Section of the Policy, for any actual or alleged Wrongful Act, except and to the extent that the Insured Entity has indemnified the Insured Persons."

15. "Insured" is defined in the Berkley Policy as any Insured Person or any Insured Entity.

3

16. Call One is an Insured Entity under the Berkley Policy.

17. The definition of "Insured Person," as used in the Berkley Policy, includes past and present officers and directors of Call One, and was expanded to include any employee of Call One.

18. "Claim" as used in the Berkley Policy includes "a written demand for monetary or non-monetary relief, including, but not limited to, any demand for mediation, arbitration, or other alternative dispute resolution process, arising from a Wrongful Act; or a civil, criminal, administrative or arbitration proceeding for monetary or non-monetary relief filed against an Insured arising from a Wrongful Act which is commenced by: (a) service of a complaint or similar pleading…. A Claim shall be deemed to have been first made at the time notice of the Claim is first received by any Insured."

19. The definition of "Claim" was broadened by endorsement to the Berkley Policy to include:

> "a formal civil, criminal, administrative or regulatory investigation of an Insured Person but only after such Insured Person is identified in writing by the investigating authority as a person against whom such proceeding described above may be commenced."

20. Pursuant to the Berkley Policy, Berkley undertook the duty to defend any Claim covered by the Berkley Policy.

21. Berkley's duty to defend any Claim covered by the Berkley Policy extends through the exhaustion of the applicable Limit of Liability identified in the Declarations, by payment of Loss.

22. "Costs of Defense" is defined in the Berkley Policy to include the reasonable and necessary fees, costs and expenses resulting solely from the investigation, adjustment, defense, and appeal of a covered Claim against Insureds.

23. "Loss" is defined in the Berkley Policy to include Damages and Costs of Defense.

24. "Damages" is defined in the Berkley Policy to include "a monetary judgment, award or settlement."

25. "Wrongful Act" is defined in the Berkley Policy to include:

"any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by any Insured Person in their respective capacity as such for the Insured Entity as well as by the Insured Entity."

**Relevant Background Facts**

26. On March 14, 2019, the Office of the Illinois Attorney General ("OAG") served a subpoena *duces tecum* on Call One (the "OAG Subpoena"). A copy of the OAG Subpoena is attached as **Exhibit 4**.

27. The OAG Subpoena was issued pursuant to the False Claims Act.

28. The OAG Subpoena was the first notice to Call One that it was the target of an action by the OAG under the False Claims Act, 740 ILCS 175/6.

29. The OAG Subpoena required production from Call One of voluminous documents and records including "All invoices, bills, and/or account summaries for sale or purchase of telecommunications services from [Call One] to any person or entity in Illinois"; "all documents that pertain to sales, advertising, promotion, or marketing of Call One to any person or entity, including but not limited to … savings analyses and price comparisons, sample invoices,

solicitation materials … that in any way reference, describe, identify, or otherwise relate to your charges, collections, payments, reporting, or handling of Illinois taxes, surcharges, or fees"; and "All documents and communications exchanged between Joey Waxman and any person or entity that in any way reference, describe, identify, or otherwise relate to your charges, collections, payments, reporting, or handling of Illinois taxes, surcharges, or fees."

30. Joey Waxman was an employee of Call One at all times material to the OAG Subpoena. Mr. Waxman was employed by Call One to market and sell Call One's telecommunications products and services to the public.

31. The documents and records sought by the OAG through the OAG Subpoena referenced Joey Waxman, and in particular, sales activities in which he engaged on behalf of Call One that were the subject of a pending civil, criminal, administrative or regulatory investigation.

32. The OAG Subpoena indicated that Call One was the target of a pending action arising under the False Claims Act.

33. On March 18, 2019, Call One tendered the OAG Subpoena to Berkley (the "Tender"). Through the Tender, Call One sought a defense against the claim or claims asserted against it by the OAG (the "OAG Claim") and in response to the investigation referenced in the OAG's written demand for information and documents.

34. On March 27, 2019, Berkley responded to Call One's Tender of the OAG Claim denying the claim. **Exhibit 5**.

35. Berkley's denial of the OAG Claim asserted that the OAG Subpoena does not constitute a "Claim." Ex. 5.

36. The OAG Subpoena sought non-monetary relief against Call One and indicated that it was part of an investigation of sales practices by Call One and Joey Waxman.

37. After receiving Berkley's denial of the OAG Tender, Call One responded identifying errors in Berkley's construction of the claim in the context of the express language of the Berkley Policy.

38. On April 19, 2019, in response to Call One's pushback, Berkley advised that "for purposes of this matter only and without prejudice to Berkley's right to take a contrary position in future or other matters, Berkley will accept the subpoena under this definition of "Claim," subject to a full and complete reservation of rights." **Exhibit 6**.

39. Berkley's April 19, 2019 correspondence advised that in its view, Berkley's "obligation for "Costs of Defense" arising from the subpoena will cease upon compliance with the subpoena." Ex.6.

40. The position taken by Berkley in its April 19, 2019 correspondence to Call One ignores that the OAG Tender was not, in itself, limited to the OAG Subpoena as the subpoena indicated that it was part of an ongoing investigation that included the prospect of litigation.

41. Berkley's April 19, 2019 correspondence distinguished the OAG Subpoena from any other litigation against Call One, investigation of Call One, or proceeding against Call One. Berkley expressly limited the defense that it would provide on behalf of Call One "solely to the subpoena and will cease on compliance with the subpoena." Ex. 6.

42. Despite the coverage position taken by it, Berkley asserted "the right to select defense counsel to defend Call One in connection with the subpoena." Ex. 6.

43. Call One demanded independent counsel because of the coverage position taken by Berkley in response to Call One's tender of the OAG Claim.

44. Berkley declined Call One's demand for independent counsel.

45. Berkley appointed counsel to defend Call One with the scope of that engagement limited to responding to the OAG Subpoena ("Subpoena Counsel").

46. However, Berkley limited its appointment of defense counsel solely to responding the OAG Subpoena.

47. Berkley' communicated that it would not provide coverage to Call One for legal fees and costs that were not first approved in writing by Berkley. Ex. 6.

48. Berkley funded the services provided by Subpoena Counsel in responding to the OAG Subpoena and the hosting fees negotiated by Subpoena Counsel for the voluminous documents that Call One was ultimately required to produce in response to the OAG Subpoena.

49. On August 6, 2019, Subpoena Counsel created a report with its analysis of the OAG Claim (the "Report"). **Exhibit 7**.

50. The Report offered an assessment of three OAG Claim concluding that the OAG Claim presented a "reverse IFCA claim" and identified exposure to Call One arising from the claim substantially in excess of the limits of coverage available to Call One under the Berkley Policy.

51. Since the claim relating to the OAG Subpoena was not limited to simply gathering documents, and since the fees incurred in defense of Call One eroded coverage, Call One demanded counsel with subject matter expertise.

52. Berkley rebuffed Call One's demands.

53. On October 17, 2019, Subpoena Counsel met with attorneys from the OAG who guided Subpoena Counsel through the claims pending against Call One in the Underlying

8

Lawsuit. A copy of an October 17, 2019 memorandum drafted by Subpoena Counsel summarizing that meeting is attached as **Exhibit 8**.

54. Subpoena Counsel's October 17 memorandum documented the OAG's summary of its claims against Call One. As memorialized in the memorandum, the OAG advised that its claims related to the failure to collect the taxes and fees imposed by the Illinois Telecommunications Excise Tax Act ("ILTET"), Illinois Telecommunications Infrastructure and Maintenance Fee ("ILTIMF"), and the Simplified Municipal Telecommunications Tax ("SMT").

55. In the October 17, 2019 meeting, the OAG explained that the claims against Call One did not arise from its failure to remit taxes and fees that it had collected from customers. Instead, it advised that its claims against Call One were based on what the OAG characterized on a reckless failure to collect the fees and taxes that were due from Call One's customer under ILTET, ILTIMF, and SMT.

56. Counsel from the OAG advised Subpoena Counsel at the October 17, 2019 meeting that the OAG determined that Call One's exposure from the reckless conduct of its employees in the failure to collect fees and taxes due from Call One's customers under LTET, ILTIMF, and SMT would be approximately $12 million and that this amount was subject to trebling under the Illinois False Claims Act.

57. In October 2019, Subpoena Counsel relayed the information gained through its meeting with the OAG to Berkley. Subpoena Counsel advised that Call One would need to settle the claims promptly in order to avoid litigation that would be expensive and extremely challenging to defend.

58. In light of Berkley's refusal to provide a defense beyond responding to the OAG Subpoena, Call One was required to engage counsel to provide a defense against the OAG Claim and incurred defense costs for defense against the OAG Claim through the defense counsel it engaged ("Defense Counsel"). Call One engaged Defense Counsel with substantial experience with the issues presented by the Underlying Lawsuit in order to be in a position to negotiate effectively with the OAG.

59. While Subpoena Counsel continued to work with the OAG in connection with the production of documents responsive to the OAG Subpoena, Defense Counsel engaged in discussions with the OAG in an attempt to mitigate and resolve Call One's exposure.

60. Based on Defense Counsel's communications with the OAG, Call One was able to confirm that there was a False Claims Act complaint against it pending under seal in the Circuit Court of Illinois.

61. However, in keeping with its ordinary practices, the OAG declined to provide a copy of that complaint to Call One and advised that absent settlement, it would proceed to litigate that action against Call One. However, the pendency of the Underlying Lawsuit was communicated to Berkley.

62. Aware that the costs of defense would exceed the remaining limits of coverage under the Berkley Policy and that Call One faced exposure that could bankrupt it, Call One began settlement discussions with the OAG.

63. Call One sought Berkley's participation in a potential settlement of the Underlying Lawsuit. In February 2020, based on the assessment of its exposure and the projected expense of defending the case provided by counsel appointed by Berkley, Call One demanded authority from Berkley in the amount of the remaining limits of coverage under the Berkley

Case: 1:21-cv-00466 Document #: 1 Filed: 01/28/21 Page 11 of 16 PageID #:11

Policy in connection with those settlement efforts. Initially, Berkley declined to provide settlement authority advising that it would treat any settlement as an excluded act.

64. Settlement discussions between the OAG and Call One proceeded. However, Berkley denied that the claims asserted within the sealed complaint presented a "Claim" under the terms of the Berkley Policy.

65. Berkley asserted that its duty of defense in the Underlying Lawsuit was separate and distinct from its defense of the OAG Subpoena. Berkley denied that the issue of its duty of defense in the Underlying Litigation was ripe.

66. However, Berkley contended that the claims asserted in the sealed complaint were not even potentially within the coverage of the Berkley Policy.

67. The defense expenses incurred in responding to the OAG Subpoena through Subpoena Counsel, funded by Berkley, had eroded the remaining limits of coverage under the Berkley Policy.

68. Call One found itself faced with mounting defense expenses and the risk of ever-mounting defense expenses in connection with the Underlying Lawsuit. It found itself faced with exposure in the Underlying Lawsuit that was likely to be substantially in excess of the remaining limits of coverage under the Berkley Policy. Call One also found itself in a position in which its insurer, Berkley, contended it owed no duty to provide a defense against the Underlying Lawsuit or contribute to a settlement of that matter.

69. To mitigate its exposure, Call One entered into a settlement agreement with the OAG in which it agreed to pay $2.5 million in addition to attorneys' fees to Relators' counsel in an amount to be determined through litigation. Ex. 3.

11

70. On January 22, 2021, Call One funded the settlement of the Underlying Lawsuit through payment of $2.5 million.

## COUNT I

### Breach of Contract

71. Call One incorporates the allegations contained in paragraphs 1 through 70 as the allegations of this paragraph 71.

72. The OAG Subpoena is a covered Claim under the Berkley Policy.

73. The claims asserted against Call One in the Underlying Lawsuit are covered as a Claim under the Berkley Policy. A copy of the complaint against Call One in the Underlying Lawsuit (the "Sealed Complaint"), as redacted by the OAG, is attached as Exhibit 2.

74. The Claim presented by the OAG Subpoena is not distinct from that presented by the Underlying Lawsuit. The OAG Subpoena and the Underlying Lawsuit arise under the same Claim.

75. Call One was entitled to a defense under the Berkley Policy for the OAG Subpoena.

76. Call One was entitled to a defense under the Berkley Policy for the Underlying Lawsuit.

77. Call One was entitled to defense through independent counsel in response to the OAG Subpoena.

78. Call one was entitled to a defense through independent counsel in the Underlying Lawsuit.

79. Call One met its obligations under the Berkley Policy in connection with the OAG Subpoena.

80. Call One met its obligations under the Berkley Policy in connection with the Underlying Lawsuit.

81. Call One satisfied the deductible applicable to the claim arising from the OAG Subpoena and Underlying Lawsuit by the payment of defense expenses it incurred in response to the OAG Subpoena.

82. Call One has incurred expenses in responding to the OAG Subpoena and in defense of the Underlying Lawsuit that were covered by the Berkley Policy and for which Berkley denied coverage.

83. Berkley breached its obligations owed to Call One under the Berkley Policy denying Call One its right to engage independent counsel in response to the OAG Subpoena and in the Underlying Lawsuit.

84. Berkley breached its obligations owed to Call One under the Berkley Policy by denying Call One's claim for a defense in the Underlying Lawsuit.

85. Berkley breached its obligations owed to Call One under the Berkley Policy denying Call One's demand for contribution of the remaining limits of coverage under the Berkley Policy toward the settlement of the Underlying Lawsuit.

86. Call One has been damaged because of Berkley's breaches of its obligations due under the Berkley Policy including the damages incurred by Call One in funding its defense of the Underlying Lawsuit including attorney's fees and other defense expenses.

87. Call One has been further damaged because of Berkley's breaches of its obligations due under the Berkley Policy including the damages incurred by Call One in funding the settlement of the Underlying Lawsuit.

WHEREFORE, Call One asks that judgment be entered in its favor and against Berkley in the amount of the attorney's fees and defense expenses incurred by Call One to defend the Underlying Lawsuit; the amount incurred by Call One in settlement of the Underlying Lawsuit; and order of pre-judgment interest and post-judgment interest, and such other relief as found to be appropriate and just.

## COUNT II

### Bad Faith: Section 155 of the Illinois Insurance Code

88. Call One incorporates the allegations contained in paragraphs 1 through 87 as the allegations of this paragraph 88.

89. Pursuant to 215 ILCS 5/155, in any action by or against an insurance company in which there is a finding that the insurance company acted in a vexatious and unreasonable manner in the settlement of the claim, the Court may award a statutory penalty as well as the reasonable attorney's fees and costs incurred by the insured to prosecute its claim against the insurance company.

90. In February 2020, although Berkley was advised of the pending Underlying Lawsuit and that the complaint was under seal, Berkley asserted that there was no written demand constituting a Claim and thus no duty to defend was triggered under the Berkley Policy.

91. Although Berkley advised that it would not provide a defense of Call One in the Underlying Lawsuit, Berkley failed to seek a declaration concerning its obligations to Call One contending, instead, that there was no "Claim" purporting to question the pendency of the Underlying Lawsuit.

92. In March 2020, the OAG provided a copy of the Sealed Complaint pending against Call One so that it could share the complaint with Berkley.

93. Call One provided a copy of the Sealed Complaint to Berkley in March 2020.

94. Yet, Berkley declined to defend Call One in the Underlying Lawsuit, even after receiving a copy of the Sealed Complaint, contending, among other things, that there was no "Claim" as that term is defined under the Berkley Policy because there was no written demand for monetary relief against Call One.

95. Berkley declined to pay the remaining policy limits toward the settlement of the Underlying Lawsuit based, in part on its assertion that there was no Claim for monetary relief against Call One.

96. Berkley's conduct with respect to Call One's claims for coverage was and continues to be unreasonable and vexatious by refusing to reimburse Call One for covered losses under the Policy without proper justification and without a reasonable investigation.

WHEREFORE, Call One requests that judgment be entered:

(a) Finding that Berkley's conduct in its handling the OAG Claim violates Section 155 of the Illinois Insurance Code;

(b) Awarding Call One the reasonable attorneys' fees incurred pursuing coverage from Berkley as part of the taxable costs of this action;

(c) Awarding Call One a penalty of $60,000 (or the maximum amount allowed by Section 155 at the time of judgment) to be assessed against Berkley;

(d) Awarding Call One prejudgment interest on the attorneys' fees it has incurred in the prosecution of this claim to enforce its rights;

(e) For such other and further relief is found to be appropriate and just.

## **JURY TRIAL DEMAND**

Call One Inc. demands a trial by jury in the above-captioned action pursuant to Federal Rule of Civil Procedure 38(b).

Dated: January 28, 2021

                                                    Respectfully submitted,

                                                    CALL ONE INC.

                                                    By: */s/ David B. Goodman*

David B. Goodman ARDC #6201242
dg@glgchicago.com
Carrie E. Davenport ARDC #6289322
cd@glgchicago.com
Kalli Nies ARDC# 6318089
kn@glgchicago.com
GOODMAN LAW GROUP | CHICAGO
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
(312) 626-1888