IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALL ONE INC., ) | |
| ) | |
| Plaintiff and ) | |
| Counter-Defendant, ) | |
| ) | No. 21-cv-00466 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| BERKLEY INSURANCE COMPANY, ) | |
| ) | |
| Defendant and ) | |
| Counter-Plaintiff. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff and Counter-Defendant Call One Inc. ("Call One"), a telecommunications business, filed this lawsuit against Defendant and Counter-Plaintiff Berkley Insurance Company ("Berkley") after Berkley refused to pay Call One's defense costs and denied coverage for an action brought against Call One by the Office of the Illinois Attorney General ("OAG") for alleged violations of the Illinois False Claims Act ("IFCA"), 740 ILCS 175/1 *et seq*. After the Court denied Berkley's motion to dismiss Call One's claims for breach of contract and bad faith denial of coverage, Berkley asserted a counterclaim against Call One, seeking rescission of the insurance contract based on alleged misrepresentations in the policy application. Now before the Court is Call One's motion to dismiss Berkley's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 43.) For the following reasons, the motion is denied.

## BACKGROUND

For purposes of Call One's motion to dismiss, the Court accepts all well-pleaded facts in the counterclaim as true and views those facts in the light most favorable to Berkley as the

nonmoving party. *See United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016). The counterclaim alleges as follows.

I. **OAG Subpoena and Underlying Litigation**

Call One provides telecommunications services and equipment to its customers. (Countercl. ¶ 12, Dkt. No. 36.) From 2011 through 2018, Call One purchased professional liability insurance from Berkley and its affiliate, the Carolina Casualty Insurance Company. (Compl., Ex.1, Berkley Policy at 2, Dkt. No. 1-1; Countercl. ¶ 4.) In June 2018, Call One renewed its previous insurance policy for the period June 30, 2018 through June 30, 2019 ("Berkley Policy"). (Countercl. ¶ 54.)

From 2008 to 2018, Call One failed to collect and remit certain excise taxes and infrastructure maintenance fees owed by its customers, as required for telecommunications retailers under Illinois law. (*Id.* ¶¶ 13–14.) In 2010, for example, Call One's former employee John Havis notified Joey Waxman, Call One's former managing director of sales and marketing, of these failures. (*Id.* ¶ 15.) From 2010 and onward, Havis continued to raise his concerns with Waxman and other senior leadership at Call One. (*Id.* ¶ 19.)

On March 14, 2019, the OAG served a subpoena *duces tecum* ("OAG Subpoena") on Call One pursuant to the IFCA to obtain documents related to Call One's collection and payment of Illinois taxes. (*Id.* ¶¶ 21–22.) In response, Call One requested that Berkley cover its costs of defense for the OAG Subpoena. (*Id.* ¶ 23.) While Berkley confirmed coverage for the costs of defense arising from the OAG Subpoena and tendered those costs, it emphasized that its coverage extended only to the OAG Subpoena. (*Id.* ¶¶ 24–26.)

Berkley subsequently learned about a pending lawsuit against Call One for alleged IFCA violations, filed under seal by the State of Illinois in 2018. (*Id.* ¶¶ 3, 27–28.) When Call One

2

submitted a claim to Berkley for the costs of defending the IFCA action, Berkley denied coverage. (*Id.* ¶ 29.) After settlement negotiations, Call One and the OAG reached a settlement pursuant to which Call One agreed to pay a specified sum in exchange for dismissal of the suit. (*Id.* ¶¶ 30, 32.) Although Call One requested that Berkley fund any settlement up to the policy limits, Call One did not permit Berkley to participate in the settlement negotiations. (*Id.* ¶ 31.) Call One subsequently filed suit against Berkley for breach of contract and bad faith denial of coverage. (*Id.* ¶ 33.)

## II. Alleged Misrepresentations in Call One's Insurance Policy Applications

After Call One tendered to Berkley the defense costs related to the OAG Subpoena, Berkley discovered Call One's alleged false misrepresentations in its applications for insurance coverage. (*Id.* ¶ 6.) Berkley learned about the misrepresentations due to a derivative complaint filed by former Call One Executive Chairman and board member H. Edward Wynn against Call One in December 2020. (*Id.* ¶¶ 34–35.) According to Berkley, Wynn's complaint describes "widespread misconduct of Call One's current and former officers." (*Id.* ¶ 35.) Relevant here, in 2015, Call One hired Wynn to help sell the company. (*Id.* ¶ 40.) Wynn retained an external accounting firm to review the company's accounting records to assess whether Call One accurately stated the company's revenues and expenses and attributed them to the correct financial periods. (*Id.* ¶ 43.) As a result of the accounting firm's work, Wynn learned of material accounting deficiencies in Call One's records. (*Id.* ¶ 44.) Wynn then informed Call One's Chief Executive Officer ("CEO") Craig Foster and its Board of Directors about his concerns with the integrity and quality of the company's financial records. (*Id.* ¶¶ 36, 43–44.) In addition, a finance department manager reported to Wynn that Call One had been erroneously completing forms

regarding mandatory regulatory payments, leading to almost $1,000,000 in underpayments. (*Id.* ¶ 50.)

In 2017, Call One abandoned its plans to sell the company. (*Id.* ¶ 47.) It also hired a new Chief Financial Officer ("CFO"), Sandra O'Connor, following the departure of its former CFO, Martha Zayas. (*Id.* ¶¶ 38, 51.) While CFO, O'Connor learned that, under Zayas's tenure, Call One had failed to collect and remit taxes from its customers as required by Illinois law. (*Id.* ¶ 52.) O'Connor subsequently resigned from her position in mid-2018. (*Id.* ¶ 53.)

Meanwhile, on June 12, 2018, Call One submitted a renewal application ("2018 Renewal Application") for Berkley to extend its insurance policy until June 30, 2019. (*Id.* ¶ 55.) Before submitting this application (and prior applications), Call One was allegedly aware of its financial reporting deficiencies, failure to comply with mandatory regulatory payments, and failure to collect and remit taxes and fees as mandated by Illinois law. (*Id.* ¶ 56.) Yet, according to Berkley, Call One never disclosed that information in connection with the 2018 Renewal Application or any other prior application for insurance, and instead misrepresented that it was unaware of any circumstances that could result in liability. (*Id.* ¶ 58.)

Specifically, in its 2011 insurance coverage application, Call One responded "no" to a question asking, "[i]s any Insured aware of any fact, circumstance or situation involving any Insureds that might reasonably be expected to result in a Claim . . . ?" (*Id.* ¶ 66.) In the 2018 Renewal Application, Call One did not answer question 5, which asked "[w]ithin the last 12 months, has there been any change in the status of any claims, loss or circumstances reported in any application previously submitted to the Insurer?" (*Id.* ¶¶ 61–62.) In the 2015 and 2017 renewal applications, Call One answered "no" to that same question. (*Id.* ¶¶ 64–65.) With those answers, Call One knowingly misrepresented and concealed from Berkley its ongoing violations

4

of various Illinois laws to induce Berkley to provide coverage. (*Id.* ¶¶ 70, 72.) Consequently, Berkley seeks recission of the 2018 Berkley Policy. (*Id.* ¶ 75.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Although the Court accepts the plaintiff's well-pleaded factual allegations as true, conclusory allegations will not be sufficient to preclude dismissal; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### I.     Pleading Standards for Recission Claims

The Illinois rescission statute, which governs rescission of insurance contracts, provides:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

215 ILCS 5/154. In essence, Section 154 establishes a two-prong test for evaluating whether an insurance policy may be rescinded due to a misrepresentation or false warranty: (1) the statement must be false; and (2) the statement "either must have been made with an actual intent to deceive

or must materially affect the acceptance of the risk or hazard assumed by the insurer." *Ill. State Bar Ass'n Mut. Ins. Co. v. L. Off. of Tuzzolino & Terpinas*, 27 N.E.3d 67, 71 (Ill. 2015) (citation omitted). In other words, Berkley may prevail on its recission claim if Call One made a misrepresentation with an intent to deceive Berkley (intent-to-deceive theory) or, even if Call One did not intend to deceive, if the misrepresentation was material to Berkley's decision to issue the policy (material misrepresentation theory).

Federal notice pleading generally requires only a short and plain statement showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a). In other words, "[u]nder Rule 8, a plaintiff only needs to give enough details about the subject[]matter of the case to present a story that holds together." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted). But when a plaintiff alleges fraud, the heightened standard of Rule 9(b) goes further to require the complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That means for claims alleging fraud, the complaint must "describe the 'who, what, when, where, and how' of the fraud—the first paragraph of any newspaper story." *Presser*, 836 F.3d at 776. (internal quotation marks omitted). In this case, Call One contends that the counterclaim should be subject to Rule 9(b)'s heightened pleading standard because Berkley's rescission claim rests on allegations that Call One engaged in a fraudulent scheme to obtain insurance coverage.

Courts have found that rescission claims based on an intent-to-deceive theory are subject to Rule 9(b)'s heightened pleading standard while claims based on a material misrepresentation theory are not. *See, e.g.*, *Cozzi v. United of Omaha Life Ins. Co.,* No. 20-CV-04031, 2021 WL 1165090, at *3 (N.D. Ill. Mar. 26, 2021); *PHL Variable Ins. Co. v. Robert Gelb Irrevocable Tr.,* No. 10 C 957, 2010 WL 4363377, at *2 (N.D. Ill. Oct. 27, 2010); *Travelers Indem. Co. v. Bally*

6

*Total Fitness*, 448 F. Supp. 2d 976, 981 (N.D. Ill. 2006). In this case, however, this is a distinction without a difference: Berkley has pleaded both recission theories with sufficient particularity to satisfy the heightened requirements of Rule 9(b).[1]

In a nutshell, Berkley adequately alleges that Call One (who), falsely and knowingly misrepresented and concealed its financial reporting deficiencies, failure to comply with mandatory regulatory payments, and failure to collect and remit taxes and fees as mandated by Illinois law (what) in connection with its submission of the 2018 Renewal Application (when and where), by failing to disclose its misconduct in response to questions on the application calling for information about actual and potential claims (how). Moreover, Berkley goes further to allege that Call One's misrepresentations materially affected Berkley's assumption of risk, that Berkley issued the Berkley Policy based on Call One's misrepresentations and in reliance on Call One not having identified any circumstances for which it could face liability, and that Berkley would not have agreed to the terms of the Berkley Policy had it known of Call One's misrepresentations. (*Id.* ¶¶ 71, 73–74.) In short, Berkley has pleaded its recission claim with particularity regardless of the theory under which it seeks to proceed.

## II.     Sufficiency of Berkley's Counterclaim

Turning to the merits of Berkley's counterclaim, Berkley seeks rescission of the 2018 Berkley Policy, formed with its acceptance of the 2018 Renewal Application. Call One contends

---

[1] In Call One's reply brief, it argues that Berkley has disavowed any allegations of fraudulent conduct. (Counter-Pl.'s Reply in Supp. of Mot. to Dismiss at 2 n.1, Dkt. No. 46.) However, this does not appear to be the case. In its response brief, Berkeley merely clarifies that the counterclaim also contains allegations of non-fraudulent conduct in addition to allegations supporting an intent-to-deceive theory. (Counter-Def.'s Resp. in Opp'n to Mot. to Dismiss ("CDRMD") at 5–6, Dkt. No. 45.) The Court thus understands Berkley to plead both recission theories in the alternative.

that any such claim necessarily fails because Berkley has not identified an actionable misrepresentation in the 2018 Renewal Application.

As an initial matter, Call One argues that the Court cannot consider Call One's alleged misrepresentations in prior renewal applications in assessing Berkley's claim for recission of the 2018 Berkley Policy. In addition to Call One's alleged misrepresentations in the 2018 Renewal Application, Berkley alleges that Call One concealed the fact of its ongoing violations of Illinois law in Call One's 2017 and 2015 Renewal Applications and 2011 Coverage Application. (Compl. ¶¶ 63–66.) But a policy renewal is, in effect, a new contract. *Dungey v. Haines and Britton Ltd.*, 614 N.E.2d 1205, 1255 (Ill. 1993); *Burmac Metal Finishing Co. v. W. Bend Mut. Ins. Co.*, 825 N.E.2d 1246 (Ill. App. Ct. 2005). And "[t]he [Illinois Insurance Code] does not make a misrepresentation in one application nullify all subsequent contracts between the parties . . . [Courts] cannot add language to the Code to make one misrepresentation defeat all subsequent insurance contracts, when the insured made no misrepresentations in its applications for the subsequent insurance." *Ill. State Bar Ass'n Mut. Ins. Co. v. Brooks, Adams & Tarulis*, 24 N.E.3d 237, 242 (Ill. App. Ct. 2014) (citing 215 ILCS 5/154); *see also Ill. State Bar Ass'n Mut. Ins. Co. v. Rex Carr L. Firm, LLC*, Nos. 4–16–0365, 4–16–0546, 2017 WL 2805126, at *5 (Ill. App. Ct. June 27, 2017) ("It follows that if policy No. 10 is to be rescinded because of a misrepresentation in an application, the misrepresentation has to be in the application for that particular policy, policy No. 10; misrepresentations in applications for other policies are irrelevant."). Accordingly, the 2018 Berkley Policy cannot be rescinded based on alleged misrepresentations in prior insurance applications.

That does not mean, however, that information in earlier applications cannot be considered as evidence of whether information in the 2018 Renewal Application was in fact

8

misrepresented and, if so, whether the misrepresentation was made with an intent to deceive. Berkley's counterclaim focuses on Call One's failure to respond to question 5 of the 2018 Renewal Application.[2] In seeking dismissal, Call One claims that the omission does not qualify as a misrepresentation, and further, that it had no duty to disclose any alleged violations of Illinois law because question 5 inquired whether there were any changes in the status of any claims, losses, or circumstances ***previously reported***, yet Call One had never previously reported any claims, losses, or circumstances.

A misrepresentation in an insurance application is "a statement of something as a fact which is untrue and affects the risk undertaken by the insurer." *Methodist Med. Ctr. of Illinois v. Am. Med. Sec. Inc*., 38 F.3d 316, 319 (7th Cir. 1994) (citations omitted). An insured's incomplete answers or failure to disclose material information on an insurance application "may constitute a misrepresentation when the omission prevents the insurer from adequately assessing the risk involved." *Id.* at 320 (citing *Garde v. Country Life Ins. Co*., 498 N.E.2d 302, 308 (Ill. App. Ct. 1986)) (finding that the plaintiff's application contained misrepresentations where the plaintiff failed to indicate her existing diagnoses of a heart condition and high blood pressure).

---

[2] In its response brief, Berkley for the first time suggests that Call One made an additional misrepresentation in the 2018 Renewal Application apart from its response to question 5. (CDRMD at 8.) Berkley claims that Call One was in the midst of a transition of its CFO position yet responded "no" to question 4, which asked whether Call One had or would have any changes in the position of the Chairman of the Board, President, CEO, CFO, or Managing Partner in the past or upcoming twelve months. (*Id.*) Call One contends that this new allegation in the response brief constitutes an improper attempt by Berkley to amend its pleading. The Court agrees. Berkley does not mention anything about question 4 or any misrepresentation regarding changes in management anywhere in its counterclaim. In responding to a motion to dismiss, a plaintiff "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 471 (7th Cir. 2020) (citation omitted). But a plaintiff may not use his response brief to amend his complaint, *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012), and that is what Berkley attempts to do here. Consequently, the Court does not consider Call One's alleged misrepresentation in question 4 as a basis for Berkley's rescission claim.

Here, Berkley sufficiently alleges that the 2018 Renewal Application contained a misrepresentation by omission. As noted above, the counterclaim alleges, among other things:

- The 2011 Coverage Application inquired whether "any Insured [is] aware of any fact, circumstance or situation involving any Insureds that might reasonably be expected to result in a Claim . . . ?" (*Id.* ¶ 58.) In response, Call One answered "no." (*Id.*)

- Before submitting the 2018 Renewal Application, Call One "knew of several potential issues for which Call One could face liability including but not limited to its financial reporting deficiencies, its failure to comply with mandatory regulatory payments, and its failing to collect and remit taxes and other fees as required." (*Id.* ¶ 56.)

- Question 5 of the 2018 Renewal Application asked whether "[w]ithin the last 12 months, has there been any change in the status of any claims, loss or circumstances reported in any application previously submitted to the Insurer?" (Compl. ¶¶ 61–62.) Call One did not respond to the question.

- Berkley would not have issued the Berkley Policy had it known about Call One's violations of Illinois law. (*Id.* ¶¶ 62, 67.)

Thus, in 2011, Call One reported that there were no circumstances involving Call One that might reasonably be expected to result in a claim. In 2018, Call One did not answer whether there had been any changes in the status of any circumstances previously reported to Berkley. Call One failed to answer that question even though, in 2015 and 2017, members of Call One's senior leadership allegedly discovered accounting deficiencies, errors in mandatory regulatory payments, and the failure to collect and remit certain taxes and fees—all circumstances that might reasonably be expected to result in a claim. Since incomplete answers and failures to disclose can be misrepresentations, Berkley has plausibly alleged that Call One's failure to respond affirmatively or negatively to Question 5 was a misrepresentation.

Not only has Berkley adequately pleaded a misrepresentation, but it has also sufficiently alleged that Call One made the misrepresentation with actual intent to deceive or, alternatively,

that the misrepresentation materially affected Berkley's acceptance of risk in renewing the Call One's insurance policy in 2018.

First, Berkley sufficiently alleges that Call One made the misrepresentation with actual intent to deceive. Specifically, Berkley alleges that Call One "knowingly" misrepresented and concealed the fact of its ongoing violations of Illinois law when it completed the 2018 Renewal Application. (*Id.* ¶¶ 56, 70.) Berkley also asserts that O'Connor was the person who actually submitted the renewal application on behalf of Call One, and that she was aware of the violations when she completed it. (*Id.* ¶¶ 83–84.) Notably, Rule 9(b) allows "malice, intent, knowledge, and other conditions of a person's mind" to be pleaded generally. Taken together, Berkley's allegations satisfy Rule 9(b)'s pleading standard with respect to whether Call One acted with an intent to deceive.

Alternatively, Berkley plausibly alleges that Call One's misrepresentation was material. A misrepresentation is considered material if "reasonably careful and intelligent persons would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application." *Methodist Med. Ctr*, 38 F.3d at 320 (citations omitted); *Meier v. Pac. Life Ins. Co.*, No. 20-CV-50096, 2022 WL 952765, at *9 (N.D. Ill. Mar. 30, 2022). Materiality is generally a question of fact, *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1017 (Ill. 2003), except where "the misrepresentation is of such a nature that no one would dispute its materiality." *Methodist Med. Ctr*, 38 F.3d at 320 (citations omitted).

Here, Berkley alleges that Call One misrepresented and concealed facts related to its ongoing violations of Illinois law when it completed the 2018 Renewal Application, Berkley was unaware of those misrepresented facts until after it paid the costs of defense for the OAG Subpoena, the misrepresentations were material to Berkely's renewal of the Berkley Policy in

11

2018, Berkley relied on Call One not reporting any circumstances for which it could face liability, and Berkley would not have renewed the Berkley Policy had it known of the misrepresented facts. (Compl. ¶¶ 6, 56, 70, 72–73.) Viewing the allegations in the light most favorable to Berkley, the Court finds that Berkley has plausibly alleged a claim for recission based on a material misrepresentation theory as well.

## CONCLUSION

For the foregoing reasons, Call One's motion to dismiss Berkley's counterclaim (Dkt. No. 43) is denied.

ENTERED:

Dated:  February 9, 2023

_____
Andrea R. Wood
United States District Judge

12